**In re James L. CHANEY, Jr. and Carolyn Jean Chaney, Debtors.**

**Don STRATEGIER, Plaintiff,**

v.

**James L. CHANEY, Jr., Defendant.**

**Bankruptcy No. 388–35881 RCM–7. Adv. No. 389–3068.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 18, 1989.

Michael L. Lynch, Norman, Okl., for plaintiff.

Pat Robertson, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Following are the Court's findings of fact and conclusions of law with respect to this § 523(a)(2)(A) issue which was tried on July 10, 1989. Don Strategier ("DS"), a plaintiff, sued James L. Chaney, Jr. ("Defendant") under § 523(a)(2)(A), contending that he had been defrauded of $38,000. The parties and a majority of the witnesses were hearing-impaired and so interpreters agreed to by the parties were used to interpret much of the testimony.

It is undisputed that DS invested $38,000 with an Abel Garcia ("Garcia") by the following notes:

| DATE | AMOUNT |
| --- | --- |
| 09/02/86 | $ 7,000 |
| 09/12/86 | 5,000 |
| 03/27/87 | 26,000 |

While the notes appear usurious on their fact and possibly forfeitable for that reason under state law, this was not pled as any type of possible defense and is not discussed hereafter for that reason.

According to the undisputed testimony, Garcia ran a Ponzi scheme and bilked not only DS, but also the Defendant. Defendant was to receive a commission on his customers who loaned Garcia money. Defendant likewise signed the three notes in question.

■ Under Texas law, the elements of actionable fraud on an alleged misrepresentation of fact are:

(1) that a material misrepresentation was made, (2) that it was false, (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that he made it with the intention that the party act on it, (5) that the party acted in reliance on it; and (6) *that the party thereby suffered injury.*

*McCurry v. Aetna Cas. and Sur. Co.,* 742 S.W.2d 863, 867 (Tex.App.—Corpus Christi 1987, writ denied), *citing Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983); *Buck v. Rogers,* 709 S.W.2d 283, 286 (Tex.App.—Corpus Christi 1986, no writ). With regard to the sixth element, there must be pleading and proof of a pecuniary loss directly attributable to the false representation. *McCurry* at 867. *Also see, Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 516 S.W.2d 138, 142 (Tex.1974);

*Chemtron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1171 (5th Cir.1982). *See also, Collier on Bankruptcy* ¶ 523.08 at 523–45 (15th ed.1988) and *In re Phillips,* 804 F.2d 930 (6th Cir.1986), where such court discusses a representation made with gross recklessness as to its truth. Where affected by the parties' relationship, intentional concealment can amount to the type of fraud contemplated by § 523(a)(2)(A).

Although hearing-impaired, Defendant had attended Texas Tech for three years and was and is gainfully employed as a salesman. There was no contention that Defendant did not have sufficient intelligence to have the requisite intent to deceive. *Accounts Supervision v. Atley,* 89 So.2d 508 (La.Ct.App.1956).

Defendant's relationship with Garcia began in early 1985. In early 1986 he invested $2,500 with Garcia on ninety-day repayment terms, and he never got paid. In October, 1985, he began to get his friends involved in investment transactions with Garcia. Although he never received any commissions from Garcia, he did initially receive DS's car, which DS had invested with Garcia, from Garcia as part payment of his commission arrangement. The vehicle was eventually retaken by DS from Defendant, but laden with a $5,800 mortgage put on it by Defendant.

A Mr. Steve Smith ("Smith") was one of only approximately ten people who invested with Garcia through Defendant who received payment. Smith immediately reinvested his repayment. In March 1987, therefore, only one of the approximately ten investors that Defendant brought to Garcia had received any payment. This was known by Defendant at such time. Before investing the $26,000 with Garcia in March 1987, DS asked Defendant whether the other investors with Garcia had received payment. Debtor advised DS that the other investors had received payment. This was a material misrepresentation; it was false and known to be false by Defendant; it was intended to be relied on by DS.

DS did rely on such representation in making the additional $26,000 investment with Garcia. Under § 523(a)(2)(A), it is not necessary that Defendant receive the money in question. *In re Tingley,* 37 B.R. 466 (Bankr.S.D.Fla.1984). In October 1987, Defendant personally sold his house and invested *$90,000* of the proceeds with Garcia. He has never been repaid such sum. This does *prima facie* [1] show that Defendant continued to believe that investments with Garcia were worthwhile even seven months after the transaction in question. Defendant has fully cooperated with law enforcement agencies in their attempted location and prosecution of Garcia.

Herschal Young ("Young") testified as a witness and his testimony initially cast some doubt on DS's lack of knowledge of nonpayment of the other investors in March, 1987. However, cross examination revealed that the witness was mistaken as to the date DS found out the other investors had not been paid.

The $26,000 debt is found non-dischargeable.

---

**1.** The caveat of *prima facie* is placed on this particular finding because, by agreement, a limited record in this particular investment was made and DS contended Defendant had other motivation for such investment.